**STATE of Tennessee, Appellant,**

v.

**Gary Michael PARTON, Appellee.**

Supreme Court of Tennessee,
at Knoxville.

July 22, 1985.

Raymond S. Leathers, Asst. Atty. Gen., Nashville, for appellant; W.J. Michael Cody, Atty. Gen., Nashville, of counsel.

Edward Nethery, Ray E. Cate, Knoxville, for appellee.

## OPINION

FONES, Justice.

Defendant was convicted of aggravated rape and sentenced to twenty years in the state penitentiary. The only issue in this Court is whether evidence of a similar prior criminal act was properly admitted at trial.

Defendant, Gary Parton, was twenty-one years of age at the time of the alleged offense, had attended a slow-learning school and was educated to approximately the tenth grade level. The alleged victim, Doug Case, was seven years of age at the time he says he was anally raped by defendant. He testified that the crime occurred after Christmas in 1979, "or 1980, the first of January." The alleged victim of the prior criminal act was Eddie Abbott. He was also seven years of age at the time defendant was said to have anally raped him. He testified that the act occurred the first week in December, 1979. Neither Case nor Abbott reported the alleged offenses until August 1980. The indictment charged defendant with aggravated rape occurring between December 1979 and April 1, 1980.

Defendant and the two alleged victims lived in the same neighborhood. Defendant acknowledged that he often played with them and with other neighborhood children their age. Doug Case testified that defendant was going hunting with a BB gun and that he asked defendant for permission to accompany him; that when they got in the woods, defendant held the gun to his head, ordered him to pull down his pants, lie on the ground, and anally penetrated him. Abbott testified on direct examination that he warned Case not to go into the woods with defendant, but Case did not heed his warning; that he followed their tracks in the snow and came upon Case and defendant in the woods in time to see defendant withdrawing from anal penetration and attempting to put his penis into Case's mouth; that about that time defendant saw Abbott and began shooting at him with the BB gun; that he and Case fled from defendant and as they were coming out of the woods, Case's mother and Abbott's father drove up; that Case told him not to tell their parents because defendant had threatened to kill Case and his parents and burn their home, if he told about the incident.

Defendant testified that in October or November 1979, he went into the woods one day to check his muskrat traps; that Case and Abbott followed him; but he denied that he sexually assaulted either of them on that occasion or on any other occasion, and denied that he had ever owned or used a BB gun or a pellet gun. Defendant was not asked the direct question whether he went into the woods with Case and was later followed by Abbott during the time period testified to by Case or during the time period stated in the indictment, but the clear implication of his testimony is that he was only in the woods with Case and Abbott, or either one of them, on one occasion, and that was in October or November.

After defendant closed his proof, the State moved for permission to call Abbott as a rebuttal witness to testify that in the first week of December 1979, he had gone into the woods with defendant where he was anally assaulted, threatened with a knife and with the murder of his parents and himself, and the burning of their home, if he told of the assault. The State had asked defendant on cross examination, over defendant's objection, if he had "any contact with Eddie Abbott down in the woods that would cause him to go to the aid of his friend, Douggie?" and received a negative response. The State insisted at trial that that question and answer put defendant's credibility at issue and made the alleged assault on Abbott relevant in rebuttal and that the prior crime was also admissible to show identity, modus operandi, and to corroborate or explain why Abbott warned

Case not to go into the woods with defendant, and why he went into the woods looking for them. The trial judge overruled defendant's objections and allowed Abbott to testify as related above.

A majority of the Court of Criminal Appeals held that the evidence was improperly admitted. It rejected the State's contention that the prior crime was relevant to matters actually in issue in the case on trial, to-wit: identity, intent and common plan or scheme. The State had abandoned the untenable contention that the prior crime was admissible for impeachment purposes, and in this Court, has abandoned the equally untenable position that identity was a viable contested issue that rendered the alleged prior crime admissible. *See Warren v. State*, 178 Tenn. 157, 156 S.W.2d 416 (1941).

A member of the Court of Criminal Appeals panel dissented. The dissent was based upon an interpretation of defendant's testimony as admitting "that he had been in the woods with Douggie and Eddie on the day in question," and that his denial of any wrongdoing, "gave his presence there a totally innocent cast, and thereby made crucial the evidence now in question." The State has adopted that interpretation of the evidence.

We have read the testimony carefully and we do not agree that the defendant admitted being in the woods with Case or Abbott, or both, at any time within the period of time testified to by Case and Abbott or charged in the indictment. Both the dissenting opinion and the State's brief assert that defendant testified that on the day in question he went into the woods to check his muskrat traps and Case and Abbott followed him.

On direct examination, defendant testified as follows:

Q Do you remember when you were arrested on these charges, Gary? About when they arrested you?

A Yeah.

Q How long had it been before your arrest, that you had seen Douggie, that you can remember?

A Well, I went down, stopped down 'er next to the woods, I went to check my traps, and they started following me. I just let them follow me.

Q Well, when was this?

A This was October, November of '79.

Q What kind of traps did you have down in the woods?

A I got a big rat traps, mushrat (sic) traps.

Q And what do you trap with your traps?

A Well, I catch mushrats (sic), whatever.

Q And what do you do with them when you catch them?

A Well, my next-door neighbor, we used to go out and catch them, and he would give us $5.00 for them, the fur on them.

Approximately eight months expired before Doug Case's mother extracted from him the story of the alleged anal rape. The substance of the additional testimony of defendant given at trial was that he had been fishing at the "Tunnells" with Case and Abbott on a few occasions when twenty or more people had been present, but had not been in the woods with either of them at any time other than the one occasion in October or November 1979, and he denied any wrongful act at that time or any other time. In our opinion, it is inescapable on this record that defendant denied being in the woods with the two alleged victims on any occasion within the time frame that the State's evidence or the indictment asserted this crime occurred, or that the alleged assault on Abbott occurred.

Also, both the dissent and the State's brief place significant emphasis on their assumption that the evidence supports the conclusion that defendant invited or lured Doug Case into the woods on the occasion of the alleged crime, and that the alleged prior crime supports defendant's motive for doing so.

Case testified on direct examination as follows:

Q  Had you ever been to the woods with Gary before, Doug?

A  No, sir.

Q  And who asked you to go to the woods?

A  I asked him.

Q  All right.  Why did you go to the woods?

A  Because I thought it was fun to go hunting, and I haven't never been before.

When the alleged victim testifies unequivocally that he asked to accompany the defendant into the woods, we think it inappropriate to find that the evidence shows the defendant lured the victim into the woods.

The general rules which govern this case were recently stated in *Bunch v. State*, 605 S.W.2d 227, 229–230 (Tenn.1980):

It is well established, of course, that in a criminal trial evidence that the defendant has committed some other crime wholly independent of that for which he is charged, even though it is a crime of the same character, is usually not admissible *because it is irrelevant.  Mays v. State*, 145 Tenn. 118, 238 S.W. 1096 (1921); *Lee v. State*, 194 Tenn. 652, 254 S.W.2d 747 (1953).  Moreover, because of the obvious prejudice of such evidence to the defendant its admission often constitutes prejudicial error, requiring the reversal of a conviction.  *Gray v. State*, 191 Tenn. 526, 235 S.W.2d 20 (1950).  However, if evidence that the defendant has committed a crime separate and distinct from the one on trial, *is relevant* to some matter actually in issue in the case on trial and if its probative value as evidence of such matter in issue is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted.

On occasions, evidence of crimes other than that on trial has been admitted as being relevant to such issues on trial as motive of the defendant, intent of the defendant, the identity of the defendant, the absence of mistake or accident if that is a defense, and, rarely, the existence of a larger continuing plan, scheme, or con-

spiracy of which the crime on trial is a part.  *Collard v. State*, Tenn., 526 S.W.2d 112 (1975); *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963); Rule 404(b), *Federal Rules of Evidence;* Rule 404, *Uniform Rules of Evidence; McCormick on Evidence* § 157 (1954).

In *Harris v. State*, 189 Tenn. 635, 227 S.W.2d 8 (1950), this Court stressed that evidence that the defendant had committed a crime other than that on trial was not admissible unless such evidence tended directly to prove his guilt of the offense with which he was charged and that to render such evidence of another crime relevant to the case on trial, its purpose and its effect must be to show more than the mere fact that the defendant is the kind of person who would not scruple to commit the kind of offense with which he is charged and that probative force could not be accorded to the mere fact that the defendant, either prior or subsequent to the commission of the offense on trial, had committed another like crime.

We note, too, that evidence that the defendant committed another crime is admissible only if the ground for relevance is actually being contested in the case on trial;  . . . .

The State's evidence was that the alleged victim, Doug Case, went into the woods at his own request because he wanted to go hunting with defendant, sometime between Christmas and early January 1980, where he was anally raped at BB gun point, and threatened with the dire consequences if the crime was reported.  The defendant's evidence was that he did not go into the woods with Case during the time period alleged, and that on the only occasion he was in the woods with Case, no wrongful act was committed.  In short, defendant based his defense on a denial that he was in the woods with Case at the time alleged and a denial that he committed any criminal offense against Doug Case at any time or place.

The State and the dissenting opinion say that the dispute was whether the defendant

lured Doug Case into the woods for a criminal purpose and carried out that intent, or whether he went to check his traps and Doug and Eddie followed him of their own volition, and nothing happened. They contend that in that context the evidence of the prior assault on Eddie was relevant to show defendant's motive in inviting Doug to go with him and to establish a common scheme or plan and tend to prove what he did to Doug "once he lured him into the woods."

■ As we have noted, the evidence affirmatively established that Doug Case asked to accompany defendant into the woods. In that state of the record, defendant's motive for luring Doug into the woods was not relevant to this trial and thus the common scheme or plan exception was not available to support the admissibility of Abbott's rebuttal testimony.

The common scheme or plan exception is most often a vehicle for admitting other nearly identical crimes when the identity of the defendant is in issue. *See Harris v. State,* 189 Tenn. 635, 227 S.W.2d 8 (1950); *Wrather v. State,* 179 Tenn. 666, 169 S.W.2d 854 (1943); *Young v. State,* 566 S.W.2d 895 (Tenn.Crim.App.1978); *e.g. Warren v. State, supra.* As heretofore noted, the State no longer contends that identity was an issue in this case.

Intent is not an element to be proved in making out the offense of aggravated rape and the defense interposed opened no door involving intent. When the presence or absence of a particular intent which is necessary to constitute the crime charged is a contested issue, and evidence of a prior crime tends to show that intent, it may render the prior crime admissible. *Mays v. State,* 145 Tenn. 118, 141, 238 S.W. 1096, 1103 (1921). Such is not the case here.

The State is confusing intent and motive with propensity and disposition to commit a crime. Evidence of other offenses is not admissible for the purpose of showing propensity or disposition on the part of the defendant to commit the crime for which he is on trial. *Young v. State, supra; United States v. Woods,* 484 F.2d 127, 134 (4th Cir.1973), cert. denied 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974). *See also Bunch v. State, supra* at 229.

■ If Abbott's rebuttal testimony with respect to the alleged prior crime had been directly relevant to an issue at trial that would have rendered such testimony admissible, the trial judge should have submitted the proof of the alleged prior crime to two additional tests before admitting it in evidence for the jury to hear. First he should have heard the evidence out of the presence of the jury for the purpose of determining whether or not the proof of commission of the prior crime and defendant's connection therewith met the clear and convincing test mandated in *Wrather v. State, supra.* If the proof had cleared that hurdle then the final test should have been whether or not its prejudicial effect outweighed its probative value. *See Bunch v. State, supra.*

■ The record must show affirmative compliance with these two requirements as a mandatory pre-requisite for review by the appellate courts. The record in this case is silent of any indication whatever that the trial judge made either of these determinations.

The judgment of the Court of Criminal Appeals is affirmed for the reasons stated herein, and this case is remanded to the Criminal Court of Knox County for a new trial. Costs are adjudged against the State.

COOPER, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.